1 | NANCY P. DOUMANIAN, ESQ., SBN: 168925
*DOUMANIAN & ASSOCIATES*
2 | 500 North Brand Boulevard, Suite 1660
Glendale, California 91203
3 | Telephone: (818) 500-7010
Facsimile: (818) 500-7011
4 | Email: nancy@doumanianlaw.com

5 | Attorneys for Defendants, CITY OF EL MONTE, *a Public Entity;* RENE
BOBADILLA, *a Public Employee;* THOMAS ARMSTRONG, *a Public*
6 | *Employee;* STEVE SCHUSTER, *a Public Employee;* SANTOS HERNANDEZ, *a*
7 | *Public Employee*

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

10

11 | BRIAN GLICK,                    CV 12-07443 PSG (VBKx)

12 |           Plaintiff,

13 |      v.                         **NOTICE OF REMOVAL OF CIVIL
                                    ACTION**
14 | CITY OF EL MONTE, a municipal
corporation; RENE BOBADILLA,
15 | individually and as City Manager for
the City of El Monte; THOMAS
16 | ARMSTRONG, individually and as
Chief of Police for the El Monte Police
17 | Department; KEN WELDON,
individual and as Chief of Police for the
18 | El Monte Police Department; STEVE
SCHUSTER, individually and as
19 |                         Chief of
Police for the El Monte Police
20 | Department; MARCIE VAIL,
individually and as Police Captain for
21 | the El Monte Police Department;
SANTOS HERNANDEZ, individually
22 | and as Police Lieutenant for the El
Monte Police Department, and DOES 1
23 | through 10, inclusive,

24 |           Defendants.

25 | *TO THE CLERK OF THE COURT:*

26 |      *PLEASE TAKE NOTICE* that Defendants, a public entity, and its public

27 | employees, Rene Bobadilla, Thomas Armstrong, Steve Shuster, and Santos

28 | Hernandez hereby removes to the Court the state action described below.

- 1 -

**NOTICE OF REMOVAL OF CIVIL ACTION**

1.     On April 4, 2012, a complaint was filed in Superior Court of the State of California in the County of Los Angeles, LASC case no.: BC481980 entitled *Brian Glick, Plaintiff vs. CITY OF EL MONTE, a municipal corporation; RENE BOBADILLA, individually and as City Manager for the City of El Monte; THOMAS ARMSTRONG, individually and as Chief of Police for the El Monte Police Department; STEVE SCHUSTER, individually and as Captain, Assistant Chief and Chief of Police for the El Monte Police Department; SANTOS HERNANDEZ, individually and as Police Lieutenant for the El Monte Police Department, and DOES 1 through 10, inclusive,* which is attached as Exhibit "A" hereto. A copy of the summons is attached as Exhibit "B" hereto.

2.     Defendant, City of El Monte, and its individual employees, Rene Bobadilla, Thomas Armstrong, Steve Schuster, Santos Hernandez were properly served with the complaint on July 31, 2012.

3.     This is an action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one which may be removed by this Court by all Defendants, under 28 U.S.C.§1441 (b), in that the Plaintiff 's Second Cause of Action arises under and alleges an action for "Free Speech Retaliation" against all defendants pursuant to 42 U.S.C. §1983 Free Speech Retaliation against all Defendants. "Federal question jurisdiction exists if the "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28, (1983)…When a federal question is present on the face of the complaint, the district court has original jurisdiction and the action may be removed to federal court. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392-93(1987)." Randy Williams v. Ragone 147 F.3d 700 (8th Circuit 1998)

4.     That Plaintiff's Second Cause of Action alleges an action for "Free Speech Retaliation" alleges that the Plaintiff made statements regarding

NOTICE OF REMOVAL OF CIVIL ACTION

improprieties related to the actions of his fellow employees in his capacity as the Acting Captain. Plaintiff alleges that he was retaliated against as a result of making statements adverse to the individual interests of the police department employees. "[T]he presence of even one federal claim gives the defendant the right to remove the entire case to federal court." <u>Gaming Corp.</u>, 88 F.3d at 543. <u>City of Chicago v. International College of Surgeons</u>, 118 S.Ct. 523, 529, 139 L.Ed.2d 525 (1997). Where at least one federal claim is involved, federal courts have supplemental jurisdiction over state law claims that are so related to the federal claim that they form part of the same case or controversy. See 28 USC § 1367(a). By raising claims that arise under federal law, Glick subjected himself to the jurisdiction of the federal court.

6.     Therefore, this Court has original jurisdiction under "Free Speech Retaliation" pursuant to 42 U.S.C. §1983 and the case law cited above.

7.     All Defendants are entitled to remove this action to this Court pursuant to 28 U.S.C.§1441 (b).

8.     The Superior Court for the County of Los Angeles, Central Courthouse is located in the Central District- Western Division and therefore this Court is the proper court for the removal of this action.

Dated: August 29, 2012

DOUMANIAN & ASSOCIATES

By:_____

**NANCY P. DOUMANIAN, ESQ.**
Attorneys for Defendants,
CITY OF EL MONTE, *a Public Entity;* RENE BOBADILLA, *a Public Employee;* THOMAS ARMSTRONG, *a Public Employee;* STEVE SCHUSTER, *a Public Employee;* SANTOS HERNANDEZ, *a Public Employee*

NOTICE OF REMOVAL OF CIVIL ACTION

EXHIBIT "A"

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Glick v. City of El Monte | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

THOMAS ARMSTRONG, individually and as Chief of Police for the El Monte Police Department; KEN WELDON, individually and as Chief of Police for the El Monte Police Department; STEVE SCHUSTER, individually and as Chief of Police for the El Monte Police Department; MARCIE VAIL, individually and as Police Captain for the El Monte Police Department; SANTOS HERNANDEZ, individually and as Police Lieutenant for the El Monte Police Department, and DOES 1 THROUGH 10 INCLUSIVE,

Defendants.

Page 2 of 2

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

1  Michael A. McGill SBN 231613
   mcgill@policeattorney.com
2  Christopher L. Gaspard SBN 275763
   chris@policeattorney.com
3  LACKIE, DAMMEIER & MCGILL APC
4  367 North Second Avenue
   Upland, CA 91786
5  Telephone: (909) 985-4003
   Facsimile: (909) 985-3299
6

7  Attorneys for Plaintiff,
   BRIAN GLICK
8

**ORIGINAL FILED**

APR 02 2012

LOS ANGELES
SUPERIOR COURT

9        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10        **COUNTY OF LOS ANGELES – EAST DISTRICT**

11

12  BRIAN GLICK,

13              Plaintiff,

14     vs.

15  CITY OF EL MONTE, a municipal corporation;
    RENE BOBADILLA, individually and as City
16  Manager for the City of El Monte; THOMAS
    ARMSTRONG, individually and as Chief of
17  Police for the El Monte Police Department; KEN
18  WELDON, individually and as Chief of Police
    for the El Monte Police Department; STEVE
19  SCHUSTER, individually and as Chief of Police
    for the El Monte Police Department; MARCIE
20  VAIL, individually and as Police Captain for the
21  El Monte Police Department; SANTOS
    HERNANDEZ, individually and as Police
22  Lieutenant for the El Monte Police Department,
23  and DOES 1 THROUGH 10 INCLUSIVE,

24              Defendants.

25

26

27

28

Case No.: KC063495 R

**COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE
RELIEF**

**DEMAND FOR JURY TRIAL**

**CASE ASSIGNED FOR
ALL PURPOSES TO
JUDGE ROBERT A. DUKES
DEPT. R**

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

1

1.   Glick, at all times relevant to this complaint, was employed by the City of El Monte as a peace officer pursuant to Cal. Penal Code Section 830.1. As such, Glick is/was entitled to the benefits and protections of the Public Safety Officers Procedural Bill of Rights Act, located at Cal. Gov't Code Sections 3300 et seq. Glick's home address is confidential under Cal. Penal Code Sections 146(e) and 832.7, and Cal. Vehicle Code Section 1808.4(a)(11).

2.   Defendant City of El Monte ("the City") is a duly constituted municipal corporation operating under the laws of the State of California, wholly situated in the County of Los Angeles. El Monte Police Department ("the Department") is an operating department of the City. At all times relevant herein for all purposes connected with the management of employment relations matters within the El Monte Police Department, the City delegated its final policy-making authority to Defendants Thomas Armstrong, Steve Schuster, Ken Weldon and Rene Bobadilla. City adopted and ratified each of their decisions as alleged herein as its own policies, customs, practices or decisions, as if the same had been promulgated directly by the City.

3.   Defendants Thomas Armstrong ("Armstrong"), Ken Weldon ("Weldon") Steve Schuster ("Schuster") are/were the Chiefs of Police for the El Monte Police Department, and maintained this position at times relevant to this complaint. Rene Bobadilla ("Bobadilla") was the City Manager for the City of El Monte. Defendant Santos Hernandez is a Lieutenant and or Captain for the El Monte Police Department at all times relevant to this complaint. In doing the things alleged herein, these individuals acted under color of state law, within the course and scope of their employment, and as an official policy-makers for the City. As Department Heads and high ranking officials, these individuals are vested with policy-making authority over actions such as the ones at issue in this complaint.

4.   Defendant DOES 1 through 10 are not known or identified at this time. On information and belief, Plaintiff alleges that each Doe is in some manner responsible for the wrongs alleged herein, and that each such Defendant advised, encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts alleged herein. When the true names and

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

1 | capacities of said Defendants become known, Plaintiff will seek relief to amend this complaint to
2 | show their true identities in place of their fictitious names as DOES 1 through 10.

3 |        5.      Defendants, and each of them, were the agents, employees and servants of every
4 | other Defendant. Defendants acted in the course and scope of said agency, service and
5 | employment at all relevant times.

6 |        6.      Defendants and employees and agents of Defendants have discriminated, harassed
7 | and retaliated against Glick for the lawful exercise of his individual civil rights and liberties of
8 | free expression and participation in labor, union, and political activities, and his reporting of
9 | violations of state and federal law and other matters of public concern. Defendants have targeted
10 | Glick due to these lawful actions. Glick has repeatedly complained about this treatment to his
11 | superiors, including Defendants.

12 |        7.      After taking office as EMPOA President, Glick engaged in numerous political,
13 | social and other causes for the betterment of the employees and the public. He was instrumental
14 | in contract negotiations and handling significant employment matters within the Department. In
15 | furtherance of these activities, he was required to make public commentary about matters
16 | occurring within the Department and take stances on various issues crucial to the EMPOA
17 | members.

18 |        8.      In addition, in or about 2008, Glick was approached by several EMPOA members
19 | who were under the direct supervision of Defendant Hernandez. The members reported several
20 | instances of misconduct on Hernandez' part, including officer safety issues placing officers in
21 | harm's way, theft of public funds, and unlawful ordering employees not to contact their EMPOA
22 | representatives. Glick submitted a two-page memorandum to Defendant Armstrong outlining
23 | several of the concerns and violations alleged by Glick and the EMPOA. Glick also sat down
24 | with Armstrong and Assistant-Chief Schuster to discuss the memo. Later, in or about 2009,
25 | Glick testified about the contents of the 2008 memo during a civil proceeding brought by another
26 | EMPOA Board member against Defendant Hernandez.

27 |        9.      Further, Glick was also instrumental in the arrest of a controversial businessman
28 | in El Monte. Based on information and belief, at all times relevant to this action, John Leung

LACKIE, DAMMEIER & McGILL,
A PROFESSIONAL CORPORATION

1  was the owner/CEO of Titan Group, the largest real estate developer for the City of El Monte. In

2  or about 2008, Glick participated in an investigation involving real estate developer John Leung,

3  wherein Leung was being investigated as a defendant in a forgery/fraud case. The facts

4  supported allegations that Leung was issuing checks from an El Monte Chamber of Commerce

5  bank account, of which Leung was not authorized to withdraw funds. The investigation was

6  prompted by a victim who contacted the Financial Crimes Unit through an intermediary.

7       10.    Based on information and belief, the 2008 criminal investigation of John Leung

8  was transferred to the Los Angeles Sheriff's Department. In or about 2008, Glick and Detective

9  Eric Walterscheid met with El Monte City Attorney Clarke Mosley. During the meeting, Mosley

10  stated that he felt that union groups in El Monte had too much power and that if it were up to

11  him, he would smash them all and take their power. However, he went on to tell them that he

12  needed their help to pass a bond measure.

13       11.    On or about April 8, 2009, Glick was contacted regarding another criminal

14  investigation of John Leung, this time involving allegations of forgery and embezzlement. The

15  investigation began when victims contacted Detective Rick George, who in turn contacted Glick

16  to assist with the investigation. On or about April 14, 2009, Glick initiated a formal

17  investigation regarding the allegations against John Leung.

18       12.    On or about April 22, 2009, Glick and his partner, Detective George, attended a

19  prearranged meeting between Leung and the alleged victims. Plaintiff recorded both audio and

20  video of John Leung admitting to the forgery of loan documents and theft of over 1.4 million

21  dollars.

22       13.    On or about April 30, 2009, Glick took the case to the FBI office in the city of

23  West Covina and met with an FBI Special Agent to discuss possible violations of federal crimes.

24  On May 20, 2009, Glick and Detective George submitted the completed crime report regarding

25  the forgery/embezzlement allegations against John Leung and Jean Jang of Titan Group. The

26  report was approved by the supervisor of the Detective Bureau.

27       14.    On or about June 19, 2009 arrest warrants were issued in the Los Angeles

28  Superior Court for the arrests of John Leung and Jean Jang based on Glick's investigation. The

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

4

COMPLAINT

1   same day, Glick and another detective arrested Leung pursuant to the warrant. Jang was arrested
2   the following day. Within an hour of booking Leung, Glick met with Lieutenant Fetner in
3   Fetner's office. During the conversation, Fetner expressed his concern that the arrest of Leung
4   would be perceived by the administration as having been politically motivated by the EMPOA.

5       15.    On or about June 20, 2009, search warrants were issued in the Los Angeles
6   Superior Court for a search of the Titan building for documents related to the criminal
7   investigation against Leung and Jang. Several individuals participated in the search, including
8   Glick, Lt. Fetner, and Detective Fisher. During the search, Lt. Fetner received a cell phone call
9   Chief Armstrong, who explained that he was on his way to the search site from his personal
10  residence. Glick pointed out how unusual it was for the Chief of Police to respond to a search
11  warrant, particularly on a weekend. Lt. Fetner agreed but chose not discuss it any further,
12  explaining instead that the Chief would discuss the matter when he arrived.

13      16.    When Armstrong arrived onscene, he called Lt. Fetner. Fetner told Glick that the
14  Chief wanted to meet with Glick alone. Glick went downstairs with Fetner and met with the
15  Chief, who seemed very uncomfortable and uneasy. As they spoke, other detectives were in the
16  area loading collected evidence into the vehicles. The Chief asked the rhetorical question, "We
17  always knew he was shady, didn't we?" The Chief told Glick that the City was requesting
18  binders that were located in the Titan Group office upstairs. Armstrong named and described the
19  binders after calling City Attorney Dave Gondeck to get the information about the binders. The
20  Chief told Glick the binders contained information regarding the procedures for removing Leung
21  and Jang as managing members of numerous LLCs related to City development. Armstrong
22  became frustrated after Glick pointed out how unusual it seemed that the City, as a LLC member,
23  would not have copies of the binders. The Chief told Glick that Glick would have to ask himself
24  if retrieving the folders would be ethical. Glick posed the question back to the Chief. Armstrong
25  said, "You'll have to ask yourself." The Chief then left the scene, telling Glick, "Good job."

26      17.    Because of the unusual nature of Armstrong's request, and because the binders
27  ultimately fell under the purview of the search warrant, Glick asked Lt. Fetner if retrieving the
28  binders would be appropriate. Lt. Fetner stated his belief that the search warrant did in fact

5

**COMPLAINT**

LACKIE, DAMMEIER & MᶜGILL
A PROFESSIONAL CORPORATION

1   encompass the binders. Glick retrieved the binders and placed them into evidence with all of the

2   other documents.

3       18.     On or about June 22, 2009, Glick met with Chief Armstrong at Armstrong's

4   request. When Plaintiff arrived, he met with Chief Armstrong, Assistant Chief Schuster, Captain

5   Marcie Vail, and Sergeant Cano. Plaintiff had three other detectives with him but Chief

6   Armstrong initially voiced his objection to the other detectives attending the meeting with

7   Plaintiff. Armstrong was visibly upset and immediately asked (1) whether Plaintiff intended to

8   file charges against Leung and Jang; (2) the amount of the bail; and (3) who had requested a bail

9   enhancement against the defendants.

10      19.     After Glick answered the Chief's questions, Chief Armstrong stated that the

11  position of the City was that the investigation had been made on behalf of the EMPOA, not the

12  City or the Police Department. Armstrong accused the EMPOA of publicly attacking Leung in

13  the past. Plaintiff and the other detectives voiced opposition to Armstrong's assertion. Plaintiff

14  then referenced Armstrong's comment regarding Leung being shady. The other administrators

15  in the room all appeared surprised by this revelation. Armstrong confirmed his earlier comment

16  and then abruptly ended the meeting.

17      20.     Within weeks, Plaintiff was approached by an accountant for Leung and Jang.

18  She detailed several of the irregular and unlawful accounting and billing practices used by the

19  Titan Group to defraud the City of El Monte out of at least $700,000.00. She also produced

20  physical evidence to prove the same. Also, two former of employees of the Titan Group

21  corroborated her statements. The investigation produced evidence strongly suggesting political

22  corruption within the City of El Monte linked to the Titan Group.

23      21.     Based on information and belief, the El Monte Police Department received and/or

24  receives rent-free office space from the Titan Group wherein it houses its Internal Affairs

25  Department.

26      22.     Based on information and belief, at least one El Monte City Councilperson

27  received substantial unreported gifts from John Leung and the Titan Group.

28

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

COMPLAINT

23.     Based on information and belief, Armstrong—and Marcie Vail at Armstrong's direction—made numerous attempts to have property seized under the Titan Group investigation released to City officials.  Based on information and belief, Armstrong also wanted the money in the frozen Titan accounts to be released to the Defendants.

24.     Based on information and belief, Armstrong facilitated the diversion of real estate revenues that would have normally been deposited into the frozen accounts, into new accounts wherein the revenues could be paid back to the City and to Leung to be used in his legal defense.

25.     In the ensuing weeks, Plaintiff received a phone call from an attorney at the District Attorney's office expressing concern over multiple inquiries made by Armstrong and his staff regarding the procedures necessary for having the money and property released from the Titan Group investigation.  The attorney thought it was highly irregular and inappropriate.

26.     Based on the apparent conflict of interest between the Titan Group investigation and the City of El Monte, the Los Angeles County District Attorney's Public Integrity Division assumed the criminal investigation.

27.     In or about June 2009, based on information and belief, Chief Armstrong approached members of the EMPOA and encouraged them to recruit others who were more likely to further the agenda of his administration to run for Board of Director positions in an attempt to influence the makeup of the EMPOA Board.  Based on information and belief, Armstrong sent emails in the same vein.

28.     On or about July 29, 2009 an email was sent to all police personnel with new El Monte Police Department directives attached.  In this email there were several revisions to existing policies as well as a new police which was, "Directive Supervisor Notification 09-06 titled 600.3 Supervisor Notification.  (Refer to EMPD Department Directive 09-06 section 600.3).  This directive essentially states, in part, that employees must notify supervision of investigations regarding high profile individuals.

29.     On or about August 12, 2009, Detective George met with Armstrong, who brought up the Titan Group case stating, "This is not the reason you're going back to patrol, but I feel it is a matter of distrust you guys had with management."

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

7

30.     On or about August 13, 2009, Lt. Hernandez was assigned to supervise the detective bureau.  Based on information and belief, this assignment was ordered to more closely monitor Plaintiff's activities as a result of the Titan Group investigation.  Since Lt. Hernandez was assigned to this position, he has routinely shown hostility towards Plaintiff that is inconsistent with the manner in which he treats other similarly situated employees.  Several employees have approached Plaintiff and offered statements regarding Hernandez' stated opposition to the EMPOA and his intentions to retaliate against Plaintiff.

31.     On or about August 19, 2009, Plaintiff was given a counseling memorandum prepared by Lt. Hernandez that accuses Plaintiff of policy violations regarding the improper handling of evidence.  Based on information and belief, Plaintiff's actions as outlined in the memo are consistent with past practices in the detective bureau.  Notably, during the documented counseling session, Lt. Hernandez accused Glick of being more concerned with Titan Group evidence than evidence from other investigations.  Furthermore, the exact same conduct for which Glick was admonished in the memo, was later approved of by Lt. Hernandez as it related to another officer.

32.     Based on information and belief, Lt. Hernandez has himself violated protocols for handling evidence on at least two instances since disciplining Glick for the same.

33.     Further evidencing Defendant Hernandez' complete disregard for Department policy and procedure involved a traffic collision that occurred in or about 2008.  Based on information and belief, Hernandez unlawfully deleted a computer entry regarding the traffic collision in order to destroy evidence that his friend had been found at-fault in the accident.  Only after the non-at-fault driver demanded a copy of the report, stating that he knew the report existed, was the entry restored by another El Monte Police Lieutenant.  Based on information and belief, this is not the only instance in which Defendant Hernandez abused his position to influence the outcome of a traffic investigation based on his personal relationship with one of the involved drivers.

34.     In or about late August/early September, Armstrong invited Glick to lunch to discuss EMPOA issues.  During the lunch, Glick told Armstrong he was being singled-out and

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

8

COMPLAINT

1    treated differently because of his role in the Titan Group investigation and his role as president of

2    the EMPOA.

3        35.    Glick has informed Chief Armstrong that he is being retaliated against by Lt.

4    Hernandez. Armstrong has completely failed to address the issue. In addition, after City

5    Manager Rene Bobadilla took over, he immediately began a campaign to retaliate against Glick

6    for his protected activities and the disclosures he has made.

7        36.    Bobadilla personally prohibited Schuster from assigning EMPOA President Brian

8    Glick to a specialized assignment-a joint task force-for which he was deemed to be the most

9    qualified, purely out of spite, ill will and hatred for Glick's protected activities and disclosures.

10   On June 13, 2011, Bobadilla threatened Schuster that although Glick was selected for the

11   assignment, he was not to allow him to go under any circumstances. Bobadilla indicated to

12   Schuster that he didn't care how he did it, but Glick was not going to the assignment. Bobadilla

13   stated that if Glick was going to meddle with City politics, Bobadilla is going to fuck with

14   Glick's livelihood. Bobadilla stated that he wants to keep Glick right at the Department "under

15   his thumb" and we will see who has the last laugh.

16       37.    Hernandez, along with other high ranking Department personnel, have admitted

17   that they felt this action by Bobadilla was unnecessary and retaliatory, and have stated that they

18   were placed in an awkward position by having to manufacture a pretextual basis to not select

19   Glick for the position. In fact, Glick was the subject of ongoing ridicule and jokes amongst

20   Department management as he spent months preparing for the specialized assignment.

21   Department management would ridicule Glick as he prepared knowing that in the end Glick was

22   not going to the assignment. In fact, by intentionally failing to notify Glick or the task force that

23   Glick was not going to join the task force, money was spent by both Glick and the task force

24   preparing for his addition. This tax payer money was ultimately wasted, simply in furtherance of

25   the retaliatory effort. By not being assigned to this position, Glick suffered financial and

26   emotional damages. These actions demonstrate the extent at which Defendants will go to exact

27   revenge.

28

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

38.     On September 13, 2011, Glick was notified by Schuster that he would not be given the assignment, despite the fact that he had already been selected. Schuster's excuse was "staffing levels and budget," the very same excuse high ranking Department personnel previously indicated they would manufacture to keep Glick from going to the assignment.

39.     Bobadilla, and his agents, have unilaterally sought out a basis to retaliate against Glick. For example, Hernandez, at Bobadilla's request, contacted the Department of Child and Family Services to illegally obtain the complete file on Glick to determine whether he had done anything wrong in those proceedings, despite the fact that no one had complied that he had. This action in seeking out misconduct to retaliate against Glick is unprecedented. In addition, the Defendants are illegally in possession of sealed and confidential documents relating to Glick that were obtained through illegal sources, under color of authority.

40.     Furthermore, Glick has been denied reasonable requests to flex his time by a mere 10 minutes in order to drive his daughter to school; the denial of these requests is in stark contrast to other Department members who have been allowed to flex their time. The denial of these requests has been made out of retaliation against Glick.

41.     Further, Glick has been denied the right to wear the same uniform as other similarly situated officers. This action was taken, again, out of retaliation. Glick was unlawfully the subject of an internal affairs investigation regarding trivial matters that were years old, and later was admonished in writing for the incident. Glick has been negatively marked down on his annual evaluation for use of EMPOA release time, which is granted to him by the City. No other EMPOA Board Members have had such negative entries.

42.     Defendants and management personnel have encouraged members who are not supporters of Bobadilla to not run for the EMPOA Board of Directors, and that if they do, they will ruin their careers. Management routinely specifically monitors Glick's attendance to determine whether he is late to work; they perform no such monitoring of other employees. Glick has been ordered to conduct absolutely no political or EMPOA business on duty despite the fact that Defendants conduct political business on duty and Defendants have specifically allowed other employees to conduct EMPOA and political business on duty. Weldon and

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

1    Armstrong have public stated, in particular at Armstrong's retirement party, that Glick and

2    EMPOA have caused problems for them.

3        43.    Glick has been told by high ranking officials that he is being watched more

4    because he is the "main guy" on the EMPOA Board. They have also indicated that they are

5    going to put Glick "in his place." Management personnel have intentionally placed Glick at a

6    certain desk so that he is visible and they can observe everything he is doing and saying, in the

7    hopes that they can find some basis to discipline and retaliate against him.

8        44.    On March 31, 2011, Glick met with retired Chief of Police Ken Weldon. Weldon

9    indicated that Steve Schuster contacted him and needed his help and asked if he would sit down

10   and speak with Glick. During the conversation, Weldon indicated he wanted to talked about

11   Glick's future. Weldon indicated that Schuster, the soon to be new Chief, wanted Glick to

12   promote to Sergeant, but that he would not be promotable as long as he remained the EMPOA

13   President and friends with the Mayor. Glick indicated that he is not the type of Sergeant

14   administration wants as he does not go after people. Weldon responded that "well that's what I

15   figured and that's what you are." Weldon threatened "you're in the way, there's a train comin',

16   if you don't wanna get run over get the fuck out of the way and stop being friends with the

17   Andre."

18       45.    Bobadilla solicited a complaint from owners of a local brewery against Glick and

19   another EMPOA Board Member, Eric Walterscheid, for allegedly threatening and harassing the

20   owners. The owners met with Bobadilla on an unrelated matter and when the fact that Glick and

21   Walterscheid were mentioned in passing, Bobadilla specifically sought negative information

22   from the owners about Glick and Walterscheid. As a result, Bobadilla initiated a frivolous

23   internal affairs investigation on Glick and Walterscheid. Walterscheid was placed on

24   administrative leave regarding the matter. The owners later testified that Bobadilla misconstrued

25   their comments and that Glick and Walterscheid had done nothing wrong.

26       46.    Bobadilla has made clear that he despises the EMPOA, the political and social

27   causes the EMPOA engages in, as well as the EMPOA Board of Directors and its President

28   Brian Glick, in particular. Bobadilla has openly made remarks to numerous individuals stating

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

that: "the EMPOA is fucked;" "they [referring to the EMPOA and Board Members] are going down;" "I'm going to take the EMPOA down;" "Walterscheid is going down;" "Glick is going down;" and "I'm going to get rid of all those fuckers." Bobadilla further revealed to individuals intimate details regarding a confidential internal affairs investigation involving an EMPOA Board Member, in violation of state and federal law. Bobadilla expressed hostility towards this members stating that he "will never see this Department again; he is not coming back to work."

47.     Bobadilla has facilitated a political environment aimed at breaking the EMPOA. For example, he has high ranking officials asking tenured officers "which side the employee is on, admin's side or the EMPOA's side." Former employee Brian Helien was retaliated against for disclosing illegal activities by Bobadilla including illegal bidding and illegally gifting City property and funds. In retaliating against Helien, Bobadilla threatened Helien stating "are you gonna turn out to be another Brian Glick, well fine then I'll order you not to come around my office also." Bobadilla was referring to the fact that he had previously ordered Glick not to come near Bobadilla or talk to him due to his hatred for Glick.

48.     In or about November 2009, based on information and belief, Hernandez responded to a comment regarding this recent transfer by stating that he was being sent to the Detective Bureau to "clean up the mess."

49.     Based on information and belief, Hernandez frequently sends others to separate Glick from other EMPOA members and inquire as to whether or not they were discussing EMPOA business.

50.     On or about November 30, 2009, based on information and belief, Captain Vail sent an email to Captain Hopkins containing a disparaging comment about Glick ostensibly based on his participation in the Titan Group investigation.

51.     Glick was recently given a negative mark on an annual evaluation based on the violation of an obscure email policy. Based on information and belief, there is no mention of the same violation in the evaluations of several other officers who were placed on notice for violating the same policy.

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

12

52.     On or about December 2009, Captain Hopkins sent several text messages regarding his intention to retaliate against Glick.  Specifically, he stated that that there was no need to worry because Glick would be gone soon or dealt with soon.

53.     On or about December 29, 2009, Glick sent an email to a supervisor that mentioned retaliation.  On or about Thursday January 21, 2010, Defendant Hernandez ordered Glick to prepare a memorandum regarding the retaliation he had been subjected to by the Department.  He set the "due date" of the memo as the following Monday.  Glick asked for more time to prepare the memo due to his obligations as parent of a young daughter.  When Glick asked for a week to prepare the memo, Hernandez called him "difficult."  That same day, Hernandez emailed Glick setting the deadline as Tuesday January 26th at 9:00am.

54.     On January 26, 2010 at approximately 8:40am, Glick provided Hernandez with a nine-page draft copy of a Tort Claim (listing, among others, Hernandez as a defendant) prepared by his designated legal counsel setting forth, in detail, the facts relating to his retaliation claims.  Glick also provided a letter from his law firm explaining that the Tort Claim draft should satisfy the memorandum requirement.

55.     On January 28, 2010, Glick was ordered by Defendant Hernandez into Captain Marcie Vail's office.  Glick was not informed of the nature of the meeting.  Glick was provided with a memo from Captain Vail entitled "Order to Complete Memorandum as Assigned."  The memo states the Captain's belief that "a communication from [Glick's] attorney does not constitute completion of the memorandum . . . ."  It goes on to state Vail's curious conclusion that notwithstanding the detailed information in the Tort Claim, Glick has "not provided the Police Department / City the information with which to address the [retaliation] issue or launch an investigation into such charges."  Remarkably, Vail re-ordered Glick to provide a "memorandum delineating the retaliation [Glick] has suffered" by February 4, 2010 at 5:00pm.  This order was a transparent attempt to further retaliate and harass Glick.

56.     Based on information and belief, Defendant Hernandez told another officer that one of the door locks to the Detective Bureau was being changed so as to monitor which individuals visit Glick and for how long.

LACKIE, DAMMEIER & McGILL<br>A PROFESSIONAL CORPORATION

COMPLAINT

57.     It is clear that Defendants have retaliated against Glick for the lawful exercise of his individual civil rights and liberties of free expression and participation in labor, union, and political activities.  Defendants have further retaliated against Glick for his reporting of violations of state and federal law.  Glick did nothing more than exercise his Constitutional rights and rights under the Public Safety Procedural Bill of Rights Act.

58.     Glick was subjected to adverse employment actions as a result of engaging in the aforementioned protected speech activities.  There exists no legitimate justification for taking the adverse actions against Glick.  Furthermore, Defendants' willingness to interfere in EMPOA matters and Defendants' open and obvious hostility toward the EMPOA, and by extension its president—Glick, evidences Defendants' complete lack of respect for both federal and state employment laws.

59.     Plaintiff has exhausted all administrative remedies to compel the relief sought herein, including the filing of a Claim for Damages which has been rejected by Defendants.

### FIRST CAUSE OF ACTION

*Retaliation – Labor Code*

*[Labor Code § 1102.5]*

*Against the City of El Monte*

60.     Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here.

61.     Labor Code section 1102.5 prohibits an employer, among other things, from retaliating against an employee for disclosing a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

62.     As discussed above, Plaintiff disclosed and actively opposed Defendants' violations of state and federal law. Defendants' actions against Plaintiff, regardless the pretext, was done in retaliation for said disclosures, and thus violates section 1102.5.

### SECOND CAUSE OF ACTION

*Attempts to Control Employee's Political Activities or Affiliations – Labor Code*

*[Labor Code § 1101, 1102]*

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

14

63.     Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here.

64.     California Labor Code sections 1101 and 1102 prohibit the controlling or directing, or tending to control or direct the political activities or affiliations of employees as well as the coercion of employees' political activities.

65.     In engaging in the aforementioned speech activities, Plaintiff engaged in activities protected by these statutes.  As a direct result of the Plaintiff's disclosures, the Defendants took the aforementioned adverse actions against him.  Absent said speech activities, Defendants would not have taken said actions.  In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiff as set forth herein.

## THIRD CAUSE OF ACTION

### *Retaliation – Public Safety Officers Procedural Bill of Rights Act*

### *[Gov't Code §§ 3302, 3309.5]*

### *Against the City of El Monte*

66.     Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here.

67.     Government Code section 3302 states, in part, that "no public safety officer shall be prohibited from engaging, or be coerced or required to engage, in political activity."

68.     Government Code Section 3309.5 provides that where it finds that a public safety department has violated any of the provisions of the Public Safety Officers Procedural Bill of Rights Act (Gov't Code  sections 3300 et seq.), to render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature including, but not limited to the granting of a temporary restraining order, preliminary or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer.

69.     Defendant City of El Monte employs law enforcement personnel, including Plaintiff, and is charged with the duty of acting in accordance with the requirements of state law, including Government Code section 3300 et seq.

15

COMPLAINT

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

70.     Defendants maliciously violated Government Code sections 3300 et seq. with the intent to injure Plaintiff in retaliation for the lawful exercise of his statutory and constitutional rights. Defendants are therefore liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, for reasonable attorney's fees as may be determined by the court, as well as Plaintiff's actual damages, as provided in Government Code Section 3309.5. In engaging in the aforementioned activities, Plaintiff engaged in activities protected by these statutes. As a direct result of the Plaintiff's protected speech, activities, and disclosures, the Defendants took the aforementioned adverse actions against them. Absent said speech, Defendants would not have taken said actions.  In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiff as set forth herein.

71.     In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiff's rights, or at least in conscious, reckless, and callous disregard of Plaintiff's rights and to the injurious consequences likely to result from a violation of said rights. General and special damages are sought according to proof. Punitive damages are sought against the individual defendants, according to proof.

## FOURTH CAUSE OF ACTION

### *Retaliation – Meyers-Milias-Brown Act*

### *[Gov't Code §§ 3502.1, 3502, 3506]*

72.     Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here.

73.     California Government Code section 3502.1 states that "No public employee shall be subject to punitive action or denied promotion, or threatened with any such treatment, for the exercise of lawful action as an elected, appointed, or recognized representative of any employee bargaining unit."

74.     Government Code sections 3502 and 3506 prohibit public agencies from interfering with, or discriminating against, public employees because of their participation in the activities of employee organizations for the purpose of representation on all matters of employer-employee relations.

16

COMPLAINT

75.     In engaging in the aforementioned speech activities, Plaintiff engaged in activities protected by these statutes. As a direct result of the Plaintiff's disclosures, the Defendants took the aforementioned adverse actions against him. Absent said speech activities, Defendants would not have taken said actions. In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiff as set forth herein.

## FIFTH CAUSE OF ACTION

### *Free Speech Retaliation*

### *[42 U.S.C. § 1983]*

76.     Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here.

77.     As a direct result of Plaintiff exercising his First Amendment rights, Defendants took the aforementioned adverse actions against Plaintiff. Absent said protected speech, Plaintiff would not have been subjected to the aforementioned adverse employment actions and would not have been harmed.

78.     The various acts of intimidation, reprisal, retaliation, suppression and/or restraint exercised by Defendants against Plaintiff has created a chilling effect on his legitimate exercise of speech by creating fear, hesitation, hostility and other destructive responses.

79.     In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiff under the First and Fourteenth Amendments to the United States Constitution to free expression. Specifically, Defendants have taken the aforementioned action against Plaintiff in direct retaliation for, and in response to the protected activities of Plaintiff.

80.     The acts and omissions of Defendants, and each of them, were done by Defendants under color of state law and as policy making authorities to which Defendant City delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed. The acts and omissions described above were taken by the City's official policy makers as members charged with such responsibility. It was or should have been plainly obvious to any reasonable policy making official of the City that the acts and omissions of Defendants as alleged herein, taking singly or

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

17

in conjunction, directly violated and continued to violate Plaintiff's clearly established constitutional and statutory rights. In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiff's rights, or at least in conscious, reckless, and callous disregard of Plaintiff's rights and to the injurious consequences likely to result from a violation of said rights. General and special damages are sought according to proof. Punitive damages are sought against the individual defendant, according to proof.

81.    Plaintiff has no plain, speedy nor adequate remedy at law to prevent future violations of his civil rights, and therefore seeks extraordinary relief in the form of permanent injunctions, as hereafter described. Damages alone are inadequate and injunctive relief is sought to command Defendants to place Plaintiff in the position he would have been in, absent the unlawful conduct of Defendants.

**WHEREFORE,** Plaintiff prays for:

1.    General, compensatory, and special damages according to proof;

2.    Punitive damages against the individually named defendants only;

3.    Injunctive relief ordering Defendants

   a)    To immediately return Plaintiff to the position he would have been in had he not been subjected to the adverse employment actions;

   b)    To expunge any negative personnel documents provided by Defendants relating to the adverse actions that are the subject of this action; and

   c)    To take any and all necessary and reasonable steps to remove the stigma and negative perception of Plaintiff;

4.    Attorney's fees as permitted by law;

5.    Costs of suit;

6.    Interest as provided by law; and

7.    Each other and further relief as the Court deems just and proper.

//

//

**COMPLAINT**

Dated:  March 29, 2012

Respectfully Submitted,

LACKIE, DAMMEIER & MCGILL APC

Michael A. McGill
Christopher L. Gaspard
Attorneys for Plaintiff,
BRIAN GLICK

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  March 29, 2012

Respectfully Submitted,

LACKIE, DAMMEIER & MCGILL APC

Michael A. McGill
Christopher L. Gaspard
Attorneys for Plaintiff,
BRIAN GLICK

19

COMPLAINT

EXHIBIT "B"

**SUM-100**

## SUMMONS
### *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CITY OF EL MONTE, a municipal corporation; RENE BOBADILLA,
individually and as City Manager for the City of El Monte (Attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
BRIAN GLICK

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

## ORIGINAL FILED

APR 02 2012

## LOS ANGELES
## SUPERIOR COURT

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* | **CASE NUMBER:** <br> *(Número del Caso):* KC063495 **R** |
|---|---|

Los Angeles Superior Court - Pomona South Court House
400 Civic Center Plaza, Pomona, CA 91766

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christopher L. Gaspard, Esq., 367 N. Second Ave., Upland, CA 91786

| **DATE:** APR 02 2012 <br> *(Fecha)* | JOHN A. CLARK (Secretario) | **L. MASCORRO** , Deputy <br> Clerk, by *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

**CASE ASSIGNED FOR**
**ALL PURPOSES TO**
**JUDGE ROBERT A. DUKES**
**DEPT. R**

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen and not a party to the within entitled action.  My business address is 500 North Brand Boulevard, Suite 1660, Glendale, California 91203.

On August 29, 2012, I served the foregoing document(s) described as **NOTICE OF REMOVAL OF CIVIL ACTION** on the interested parties in this action by placing in the U.S. mail, an [ ] original or [X] true copies thereof enclosed in a sealed envelope with postage prepaid and addressed as follows:

Joel W. Baruch, Esq.                           Attorneys for Plaintiff,
Nikki Fermin, Esq.                             BRIAN GLICK
Law Offices of Joel W. Baruch, PC
2020 Main Street, Suite 900
Irvine, California 92614
Tel:  (949) 864-9662
Fax: (949) 851-3185

[X]   **(BY MAIL)**  I caused such envelope to be deposited in the mail at Glendale, California.  The envelope was mailed with postage thereon fully paid.  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence from mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Glendale, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

[ ]   **(BY FACSIMILE TRANSMISSION)**  I caused a true and complete copy of the document described above to be transmitted via facsimile transmission to the telephone number(s) set forth opposite the name(s) of the person(s) set forth above.

[ ]   **(BY ELECTRONIC TRANSMISSION)**  I caused such document to be delivered via electronic transmission to the addressee listed above.

[X]   **(FEDERAL)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

I served the documents by the means described above on August 29, 2012.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| | |
|---|---|
| Delyn Spiers | |
| (Type or Print Name) | (Signature of Declarant) |

NOTICE OF REMOVAL OF CIVIL ACTION